O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RICHARD QUINONES, | ) | Case No. 17-03536 DDP-PLAx |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING DEFENDANT'S** |
| | ) | **MOTION TO DISMISS PLAINTIFF'S** |
| v. | ) | **SECOND AMENDED COMPLAINT** |
| | ) | |
| OCWEN LOAN SERVICING, LLC, | ) | [Dkt. 33] |
| | ) | |
| Defendant. | ) | |

Presently before the court is Defendant's Motion to Dismiss. Having considered the parties' submissions, the court adopts the following Order.

## I. BACKGROUND

Plaintiff Richard Quinones ("Quinones") allegedly incurred debts from Defendant Ocwen Loan Servicing, LLC ("Ocwen"). (Second Amended Compl. ("SAC") ¶ 18.) Between April 4, 2011 and June 9, 2016, Ocwen called Quinones' cellphone using an automatic telephone dialing system ("ATDS") in attempts to collect the alleged debt. (*Id*. ¶ 19.) When Quinones answered the calls, there would often "be silence with a click or a beep-tone, before a representative would pick up and start speaking." (*Id*. ¶ 21.) On other occasions, the caller was a recorded voice or message. (*Id*. ¶ 22.) In total, Quinones received at least 1,053 calls. (*Id*. ¶ 23.)

Quinones alleges he did not provide express consent to receive calls from Ocwen. (*Id*. ¶ 26.) Furthermore, Quinones states he revoked any type of prior express consent, if it ever existed, by picking up the calls and stating on several occasions that he no longer wished to be contacted. (*Id*. ¶ 27.) Quinones alleges the calls continued for at least one year after the revocation. (*Id*. ¶ 28.)

Based on these allegations, Plaintiff Quinones brought suit against Ocwen for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, and common law negligence. The SAC asserts three causes of action: negligent violations of the TCPA; knowing and/or willful of the TCPA; and negligence. (*Id*. ¶¶ 50–62.) Ocwen now moves to dismiss the claims asserted in the SAC.

## II. LEGAL STANDARD

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Conclusory allegations or

allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." *Id*. at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. *Id.* at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id*. at 679. Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." *Twombly*, 550 U.S. at 555. "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III. DISCUSSION

### A. Standing

Defendant contends that Quinones cannot establish Article III standing because he has not adequately pled an "injury in fact" arising from Defendant's conduct. (Def.'s MTD at 6). To satisfy the "injury in fact" requirement, a plaintiff must have suffered "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical. *Spokeo v. Robbins*, 136 S.Ct. 1540, 1547 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "[I]ntangible injuries can nonetheless be concrete." *Id*. at 1549.

Quinones asserts that he has met this standard in his pleading. As to injury, the SAC alleges that Quinones suffered an invasion of his privacy interests and became "frustrated and distressed" that the collection calls continued despite his instructions that Defendant stop calling him. (SAC ¶¶ 35, 36). It further alleges that the calls "disrupted Plaintiff's daily activities and the peaceful enjoyment of Plaintiff's personal and professional life, including the ability to use Plaintiff's phone." (SAC ¶ 37). Finally, the SAC claims that the calls intruded on Plaintiff's relationships with close family members. (SAC ¶ 38). Quinones began to "ignore or send to voicemail many incoming calls from

3

unknown numbers, out of frustration in dealing with Defendant'[s] unwanted and intrusive calls. In doing so, Plaintiff missed important communications from friends and family." (SAC ¶ 38).

The court finds that the harms alleged are particularized to Quinones and sufficiently concrete to confer Article III standing. In *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1042 (9th Cir. 2017), the Ninth Circuit recently interpreted the Supreme Court's ruling in *Spokeo v. Robbins*, 136 S.Ct. 1540 (2016), which concerned standing to sue under the TCPA. The Ninth Circuit concluded that, in enacting the TCPA, "Congress identified unsolicited contact as a concrete harm, and gave consumers a means to redress this harm." *Id.* at 1043. Specifically, the court opined that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients." *Id.* Therefore, "a plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'" *Id.* (quoting *Spokeo*, 136 S.Ct. at 1549).

Although Defendant's phone calls to Quinones were ostensibly for the purpose of debt collection and not telemarketing, the court finds that a similar reasoning applies here.[1] As the *Van Patten* court acknowledged, "the FCC has established no rule that a consumer who gives a phone number to a company has consented to be contacted for any reason." *Id.* at 1046. Rather, "the transactional context matters in determining the scope of a consumer's consent to contact." *Id.* At the pleading stage, Quinones has adequately set forth a concrete injury caused by Defendant's recurring debt collection calls, to which he claims he did not consent. (SAC ¶¶ 26-27, 35-38).

Moreover, the court finds that the district court cases upon which Defendant relies, namely *Romero* and *Ewing*, are inapposite because they adopt a higher standard to satisfy Article III standing requirements under the TCPA, and were decided before the

---

[1] The TCPA regulates not only calls made for the purpose of solicitation, but also calls made to cell phones using ATDS systems. *See* 47 U.S.C. § 227 (b)(1)(a)(3).

4

Ninth Circuit had the opportunity to construe *Spokeo* through its ruling in *Van Hutton*. *See Romero v. Dep't Stores Nat'l Bank*, 199 F.Supp.3d 1256 (S.D. Cal. 2016); *Ewing v. SQM US, Inc.*, 211 F.Supp.3d 1289 (S.D. Cal. 2016). Therefore, the court joins with many other district courts that have declined to adopt the reasoning in *Romero* and *Ewing* in the wake of *Van Hutton*. *See, e.g., Smith v. Blue Shield of California Life & Health Ins. Co.*, 228 F. Supp. 3d 1056, 1062 (C.D. Cal. 2017); *Abante Rooter & Plumbing, Inc. v. Pivotal Payments, Inc.*, No. 16-CV-05486-JCS, 2017 WL 733123, at *7 (N.D. Cal. Feb. 24, 2017); *see also LaVigne v. First Cmty. Bancshares, Inc.*, 215 F. Supp. 3d 1138, 1147 (D.N.M. 2016); *Cabiness v. Educ. Fin. Sols., LLC*, No. 16-CV-01109-JST, 2016 WL 5791411, at *6 (N.D. Cal. Sept. 1, 2016). Under the standard articulated in *Van Hutton*, the court finds that Quinones has pled injury sufficient to satisfy Article III standing.

**B. Negligence**

To state a claim for negligence under California law, Quinones must allege that Ocwen "had a duty to use due care, that [it] breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Hayes v. Cty. of San Diego*, 57 Cal.4th 622, 629 (2013) (quotations omitted). Ocwen contends that it owed Quinones no duty of care, and that this absence is therefore fatal to his negligence claim.

Quinones' SAC states that "Defendant had a duty of care to Plaintiff to use . . . reasonable skill and care in carrying out account activities. Specifically, Defendant had a duty to act reasonably when collecting an alleged debt from Plaintiff, including the means and methods of contacting Plaintiff." (SAC ¶ 59.) Quinones further alleges that "Defendant had a duty to use care to not infringe on consumers' privacy rights when collecting on alleged debts and not calling Plaintiff hundreds and/or thousands of times to harass and/or abuse Plaintiff." (*Id.* ¶ 59.) The SAC concludes that Defendant breached this duty by calling him a "voluminous number of times" and "continued to call despite Plaintiff's request that the calls stop." (*Id.* ¶ 59.)

As an initial matter, the court does not rule out the existence of a duty of care as it relates to Ocwen's conduct in this case. In the context of a lender-borrower relationship,

5

courts have held that some activities are not protected by a duty of care. *See McCarty v. GCP Mgmt., LLC*, No. CIV 10-00133 JMS/KSC, 2010 WL 4812763, at *2 (D. Haw. Nov. 17, 2010) (finding no duty of care arising from lender negligently "ma[king] loans they knew Plaintiffs would be unlikely to repay"); *Champlaie v. BAC Home Loans Servicing, LP*, 706 F.Supp.2d 1029, 1061 (E.D. Cal. 2009) (finding no duty of care when lender "place[s] borrowers in a loan, even where there was a foreseeable risk borrowers would be unable to repay"); *Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal. App. 3d 1089, 1096 (Ct. App. 1991) (finding no duty of care when lender "apprais[es] the borrower's collateral to determine if it is adequate security for a loan"); *Wagner v. Benson*, 161 Cal.Rptr. 516, 521 (Ct. App. 1980) (finding no duty of care by lender to "ensure that borrower will use borrowed money wisely").

Yet none of these courts addressed the situation at hand here, where a lender uses the borrower's personal phone number without consent and places a voluminous number of calls regarding the debt. In effect, "Defendant went beyond its role as a lender to become an aggressive debt collector, calling Plaintiff 1,053 times." (Pl.'s Opp. at 4, Dkt. 35). Arguably, such repeated and non-consensual conduct does not fall within the typical "scope of [a lender's] conventional role as a mere lender of money," and could therefore warrant the imposition of a duty of reasonable care. *Cf. Mercury Sav. & Loan Ass'n*, 225 Cal.App.3d 1458, 1469, 275 Cal.Rptr. 871 (1990) ("[A] creditor has a qualified privilege to protect its economic interest, though that privilege may be lost if the creditor uses outrageous and unreasonable means in seeking payment."); *see also Colorado Capital v. Owens*, 227 F.R.D. 181, 189 (E.D.N.Y. 2005) (finding that credit-card issuers owe a duty of care to customers in the collection of debts).

In cases concerning debt collection, some courts have declined to find a duty of care when the lender's conduct appeared to fall within the "scope of [their] conventional role as a mere lender of money." *See Inzerillo v. Green Tree Servicing LLC*, No. 13-CV-06010-MEJ, 2014 WL 1347175, at *6 (N.D. Cal. Apr. 3, 2014) (finding that "Plaintiff's allegations show only that Defendant acted as a loan servicer seeking to collect on a

debt")[2]; *Sepehry-Fard v. Dep't Stores Nat'l Bank*, No. 13-CV-03131-WHO, 2013 WL 6574774, at *2 (N.D. Cal. Dec. 13, 2013) (finding that complaint alleged no facts showing that Defendant "went beyond the domain of a creditor seeking to collect on a debt"). Quinones, by contrast, adequately alleges that Defendant's debt collection calls went beyond the pale, and constituted harassing and abusive behavior that exceeded the normal domain of a lender collecting on a debt.

Finally, in support of its argument that Ocwen owed no duty of care to Quinones, Defendant advances the general proposition that "where a statute provides for civil remedies, a plaintiff's recourse is under the statute, not with a negligence claim." (Def.'s MTD at 4). This proposition, however, does not reflect the holdings of the cases that Defendant cites in support, *Chaconas* and *Sailola*.

In *Chaconas*, the plaintiff failed to state a negligence claim arising from debt collection calls. *Chaconas v. JP Morgan Chase Bank*, 713 F.Supp.2d 1180, 1186 (S.D.Cal.2010). Yet the court's holding was not premised on the fact that there was no legal duty between bank and creditor. Rather, the court held that the the plaintiff did not adequately plead "a causal connection" between the bank's conduct and her physical injuries. *Id.* Moreover, the *Chaconas* court found that the plaintiff could not recover for negligent infliction of emotional distress because "the defendant [had] not assumed a duty to plaintiff in which the emotional connection of the plaintiff is an object," or breached some other legal duty that "threaten[s] physical injury." *Id.* at 1187. As Quinones has not raised a claim of negligent infliction of emotional distress, that same analysis does not apply here.

---

[2] Absent the proper context, *Inzerillo*'s pronouncement that "Defendant had no legal duty to engage in fair, honest, and respectful practices in the collection of consumer debts," *id*. at *6 (citing *Chaconas v. JP Morgan Chase Bank*, 713 F.Supp.2d 1180, 1187 (S.D.Cal.2010)), sweeps too broadly and, as discussed below, does not confine the holding of *Chaconas* to the negligent infliction of emotional distress context in which it arose.

7

Defendant's citation to *Sailola* is inapposite as well. The *Sailola* court dismissed a negligence claim with leave to amend, holding that the plaintiff had failed to identify a specific duty of care that the defendant had violated, separate from the defendant's violations of the TCPA or the Hawaii statutes. *Sailola v. Mun. Servs. Bureau*, Civ. No. 13-00544 HG-RLP, 2014 WL 3389395, at *9 (D. Haw. July 9, 2014). In contrast, the court finds that Quinones has adequately identified a duty of reasonable care that Ocwen violated through its repeated collection calls.

### C. Punitive Damages

Under state law, punitive damages are proper when clear and convincing evidence shows that the defendant acted with oppression, malice or fraud. *See* Cal. Civ. Code § 3294(a). Defendant argues that Quinones has failed to plead oppression or malice with sufficient factual detail as to support a request for punitive damages.

At this relatively early stage in the litigation, the court declines to dismiss Plaintiff's request for punitive damages. Taking each of Quinones' allegations as true, Defendant may have engaged in behavior with "a conscious disregard" of his rights, *id*. at 3294(c), by calling him over 1,000 times over a five-year period, despite his lack of prior consent and express requests to stop the calls.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss is DENIED.

**IT IS SO ORDERED.**

Dated: October 16, 2017

_____
DEAN D. PREGERSON
UNITED STATES DISTRICT JUDGE

8